***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The employer was subject to the Workers' Compensation Act at the time of the alleged injury.
4. An employer/employee relationship existed between plaintiff and KVS Construction at the time of the alleged injury.
5. The employer in this case is KVS Construction, Inc.
6. The alleged insurance carrier for KVS Construction is Commerce and Industry Insurance Company which has been substituted for AIG. *Page 3 
7. The potential statutory employer in this case is Flaherty 
Collins, Inc. The insurance carrier for Flaherty Collins, Inc. is Westfield Insurance Co.
8. Plaintiff alleges to have sustained compensable back, pelvis and hand injuries on July 16, 2007 while working for KVS Construction.
9. Plaintiff's average weekly wage is yet to be determined.
10. Plaintiff filed this claim for injuries to his back, pelvis and right hand.
11. Plaintiff was paid the entire day of the alleged injury.
12. Plaintiff last worked for KVS Construction on July 16, 2007.
13. At the hearing before the Deputy Commissioner, the following exhibits were entered into evidence:
 a. Industrial Commission forms and filings, medical records, discovery responses, and other documentation collectively submitted as stipulated exhibits;
 b. Email correspondence dated May 25, 2007 between Bob Woods at Flaherty Collins and Keith Suggs at KVS Construction, Inc., marked as Defendant KVS Construction, Inc.'s Exhibit 1.
14. The issues before the Commission are: did plaintiff sustain a compensable injury by accident and if so, what, if any, additional medical treatment or financial compensation is due; is plaintiff's claim barred by N.C. Gen. Stat. § 97-12; did defendant-employer KVS Construction, Inc., properly maintain insurance coverage in North Carolina for all relevant periods of time; and what carrier, if any, was on the risk for the relevant period of time.
 *********** *Page 4 
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 46 years old and was living with his mother in Ft. Lauderdale, Florida. He has a tenth grade education.
2. KVS Construction, Inc. (hereinafter "defendant-employer") began work on the Woodfield Glen project in Raleigh, North Carolina on July 2, 2007.
3. Plaintiff began working in Raleigh for defendant-employer on July 16, 2007 as a laborer.
4. On July 16, 2007, plaintiff had been working for approximately three hours when another employee who was driving a forklift dropped a pallet of lumber on plaintiff's left hand. The forklift driver hit a lever, causing the contents of the pallet to fall onto plaintiff.
5. Plaintiff was taken by ambulance to WakeMed where he stayed until discharged on August 15, 2007.
6. At the time of his hospital admission, plaintiff testified positive for cocaine, cannabinoid, and opiates. Therefore, under N.C. Gen. Stat. § 97-12, there is a presumption that plaintiff was impaired at the time of his accident.
7. During his hospital stay, plaintiff underwent amputations of the ring and small fingers of his left hand, as well as treatment for a pelvic fracture. Plaintiff is left-hand dominant.
8. Since released from the hospital, plaintiff has had only sporadic treatment because the claim was denied and plaintiff did not have the funds to continue seeking medical attention.
9. Due to his medical condition, plaintiff has been unable to return to any employment since the accident. *Page 5 
10. Defendants argue that plaintiff was under the influence of intoxicating substances at the time of the accident and should be barred under N.C. Gen. Stat. § 97-12.
11. The evidence does not show that plaintiff had consumed a sufficient quantity of intoxicating beverage or controlled substance to cause plaintiff to lose the normal control of his bodily or mental faculties, or both, to such an extent that there was an appreciable impairment of either or both of these faculties at the time of the injury. Eva Teleky, the assistant superintendent for Flaherty Collins, had the opportunity to observe plaintiff on the day of his accident. She described him as energetic and talkative, but did not describe him as under the influence of an impairing substance. Plaintiff rebutted the presumption of impairment and has shown that any substance abuse was not a proximate cause of the accident. This accident was caused by the negligence of the forklift operator.
12. Plaintiff has not worked since the accident. Plaintiff testified that defendant-employer paid him $1,000.00 every two weeks through September or October 2007, after which time the payments stopped. Plaintiff's average weekly wage at the time of injury was $500.00 per week, resulting in a compensation rate of $333.34 per week.
13. Compensability in this case is not in dispute. No medical testimony was taken in this case.
14. The primary issue in dispute is whether defendant-employer is entitled to receive insurance coverage for plaintiff's injuries pursuant to a policy issued by AIG on June 6, 2007.
15. Keith Suggs, who is plaintiff's brother and is the owner of defendant-employer, was previously the owner of another business, KVS Windows and Doors. KVS Windows and Doors was restructured in May 2007 due to the fact that the business had begun handling a larger scope of work. *Page 6 
16. Prior to the restructure of the company, some time in May or June 2007, Mr. Suggs bid on the Woodfield Glen North Carolina project, for which Flaherty Collins was the general contractor.
17. During the bidding process, Mr. Suggs went to the offices of his insurance agent, ABT Insurance Services (ABT). On prior occasions, Mr. Suggs had met with the owner of ABT, Gennie Todd. Because Ms. Todd was away from the office in late May and early June 2007, Mr. Suggs met with Ms. Sorto on May 24, 2007. At that time, Mr. Suggs requested a certificate of workers' compensation insurance for KVS Windows and Doors for the Raleigh project. No changes were made to the KVS Windows and Doors' policy at that time. According to Ms. Sorto, the policy was not changed because KVS Windows and Doors was only bidding on the job and did not actually have the job in North Carolina.
18. On May 25, 2007, Mr. Suggs received an emailed letter of intent from Bob Woods, the vice president of Flaherty Collins. At the time he sent the emailed letter of intent, Mr. Woods understood that defendant-employer would be the framing subcontractor on the job in North Carolina. However, Mr. Woods testified at the hearing that any subcontractor assignment is subject to change prior to the work actually beginning.
19. Mr. Suggs met again with Ms. Sorto on June 4, 2007. During the meeting, Mr. Suggs asked ABT to issue a new insurance policy for defendant-employer. Mr. Suggs told Ms. Sorto that he needed to re-do the workers' compensation and general liability coverage, because he was in the process of getting a job with Flaherty Collins in North Carolina that was being bid as defendant-employer KVS Construction, Inc., rather than KVS Windows and Doors.
20. Ms. Sorto completed the application for insurance for defendant-employer, asking Mr. Suggs questions as she did so, and Mr. Suggs signed the application. On the application, *Page 7 
Mr. Suggs stated that he had only one employee, that no employees traveled out of state, and that his company had no previous policy cancellations. A prior policy for KVS Windows and Doors had been cancelled for noncompliance with an audit. Defendants argue that Mr. Suggs made material misrepresentations on the application. However, the Commission finds that as of the date the application was completed, defendant-employer was a new business that had not hired any employees, had no employees that traveled out of state, and had never had a policy cancellation.
21. On the Information Page of the workers' compensation policy, Item 3A stated that the policy specifically applies to the workers' compensation law of the State of Georgia. Because this claim involves an accident that occurred while plaintiff was working on a North Carolina job site, for which the general contractor was a North Carolina corporation, the Commission finds that North Carolina law applies.
22. Item 3C, entitled "Other States' Insurance," indicated that Part III of the insurance policy applied to the states listed. North Carolina is a state listed in Item 3C.
23. Part III of the policy states as follows:
 1. This Other States' Insurance applies only if one or more states are shown in Item 3C of the Information Page;
 2. If you begin work in any one of those states after the effective date of this policy and are not insured or not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3A of the Information Page; *Page 8 
 3. We will reimburse you for the benefits required by the workers' compensation law of that state if we are not permitted to pay the benefits directly to the persons entitled to them;
 4. If you have work on the effective date of this policy in any state not listed in Item 3A of the Information Page, coverage will not be afforded for that state unless we are notified within 30 days.
24. The effective date of the policy between defendant-employer and AIG was June 6, 2007.
25. As of June 6, 2007, defendant-employer had not begun work in North Carolina. Mr. Suggs testified that he believed that when defendant-employer later began work in North Carolina, it would be covered under the policy. Defendant-employer had no employees in North Carolina on June 6, 2007.
26. After entering into the policy with AIG, Mr. Suggs received correspondence from AIG regarding how to communicate a change to the policy. In that correspondence, AIG instructed defendant-employer to go through their own insurance agent to communicate a change to the policy.
27. The first employees from defendant-employer began working in North Carolina on July 2, 2007. However, the subcontract between defendant-employer and Flaherty Collins was not signed until August 22, 2007.
28. Approximately a week and a half after plaintiff's accident on July 16, 2007, Mr. Suggs notified ABT of the accident. He believed ABT would notify AIG of the accident.
29. Mr. Suggs believed that defendant-employer had coverage for plaintiff's July 16, 2007 accident and that as of that date the premium payments were current on the policy. *Page 9 
30. On July 30, 2007, Mr. Suggs met with Gennie Todd and Glenda Sorto at the ABT office in Georgia. They discussed the work which had begun in North Carolina and the need to add North Carolina to the workers' compensation coverage. Mr. Suggs requested that a certificate of insurance be issued to Flaherty Collins for defendant-employer. Ms. Sorto issued this certificate of insurance.
31. On August 1, 2007, Ms. Sorto sent notification to Appalachian Underwriters that North Carolina and other states needed to be added to defendant-employer's policy. Ms. Sorto also provided payroll information. At that time, Appalachian Underwriters was acting as the insurance wholesaler for the policy between defendant-employer and AIG.
32. Ms. Todd testified that, based on her dealings with Appalachian Underwriters and previous discussions with representatives there, she understood that if a company had a job that was out of state that was anticipated to last for 30 days or less, the other state did not have to be added as an endorsement to the policy. However, since Mr. Suggs indicated that the North Carolina job was going to last more than 30 days, an endorsement request was sent to Appalachian Underwriters on August 1, 2007, which was within 30 days after work began in North Carolina.
33. On or about August 13, 2007, Ms. Todd spoke with an adjuster at AIG, Bob May. During the conversation, Mr. May mentioned, and thus had knowledge of, plaintiff's July 16, 2007 accident and injury. Following that conversation, Ms. Todd reviewed the policy and was still of the belief that coverage would be provided under Part III of the policy because the carrier was notified within 30 days of starting work in another state.
34. Appalachian Underwriters did not respond to ABT's faxed request until the end of September 2007. That response requested further information. Ms. Sorto testified that she *Page 10 
responded the same day with information, and then received a second fax from Appalachian Underwriters on October 3, 2007. She again provided additional information. After October 3, 2007, Ms. Sorto did not receive any further request for information from Appalachian Underwriters.
35. Katherine Vincent is employed with Appalachian Underwriters as a renewal technician and was previously employed as an endorsement technician handling any requests pertaining to AIG policies in July and August 2007. As an endorsement technician, Ms. Vincent's job duties involved getting a request from an insured or an agent to make a change to the policy, reviewing the carrier's guidelines to determine the information needed, gathering the information from the insured or agent, and then sending the request to the carrier.
36. Ms. Vincent confirmed that insurance agents do not communicate directly with the carrier, but instead are instructed to communicate with carriers through Appalachian Underwriters. This is the procedure requested by the carriers. According to Ms. Vincent, the first communication received from ABT regarding their request to add North Carolina and other states to the workers' compensation insurance policy for defendant-employer was on August 9, 2007. Ms. Vincent did not know when the faxed request from ABT was actually received by Appalachian Underwriters. She did not dispute the August 1, 2007 date on which Ms. Sorto indicated the fax was sent.
37. Ms. Vincent testified that she sent a fax to ABT on August 9, 2007 requesting the physical addresses and work class codes for the states to be added. She testified that she did not receive a response, so she faxed an additional request for the same information on August 16, 2007. A final request was sent to ABT on August 30, 2007. *Page 11 
38. Ms. Vincent testified that Appalachian Underwriters did not hear from ABT until September 25, 2007, when one of her co-workers got a phone call from ABT. After speaking with the agent, the August 30, 2007 fax was sent to ABT again on September 25, 2007. More information was requested from ABT on October 3, 2007.
39. Ms. Vincent changed departments within Appalachian Underwriters on October 5, 2007. In reviewing the computer system, she noted that the underwriters at Appalachian Underwriters had given the green light to endorse the policy on November 5, 2007. The underwriting approval request was sent to AIG on the same day and it was unclear what response was received back from AIG.
40. Ms. Vincent also testified that she was familiar in general terms with Part III of AIG's workers' compensation policies regarding coverage for work in other states. It was Ms. Vincent's understanding that if notification is provided within 30 days of starting work in those states listed in Item 3C, coverage would be afforded for those states.
41. Susan Pinto, employed as an underwriting quality manager for AIG, testified that she had reviewed AIG's file pertaining to defendant-employer, including the application for insurance that was submitted. Ms. Pinto could not find any record to indicate that AIG was notified that defendant-employer was working in North Carolina.
42. Ms. Pinto further testified that, on August 1, 2007, AIG received an email from Appalachian Underwriters, asking for a change in the policy limits but not addressing the request to add other states to the policy. She indicated that AIG never received the certificates of insurance that were issued for KVS Windows Doors or defendant-employer. *Page 12 
43. Ms. Pinto agreed that, pursuant to the communications sent by AIG directly to its insured, AIG instructs its insured to go through their own agent if there is to be a change to the policy.
44. Ms. Pinto further testified that Appalachian Underwriters was not an agent of AIG. However, according to Ms. Pinto, AIG requires that requests for changes to an AIG policy be made to Appalachian Underwriters and not directly to AIG. Therefore, for purposes of making changes to policies, including the addition of coverage for other states, Appalachian Underwriters was the agent of AIG, and notice to Appalachian Underwriters constituted notice to AIG.
45. Ms. Pinto further testified that she did not know whether or not Appalachian Underwriters had communicated a request to AIG to add North Carolina to the policy at issue. Ms. Pinto admitted that she had no personal knowledge of any communications between Appalachian Underwriters and AIG and had no personal knowledge of the investigation of plaintiff's claim.
46. As to the policy itself, Ms. Pinto acknowledged that there is no definition in Part III, or anywhere else in the policy, that explains what it means for an insured to "have work on the effective date of the policy." Part III of the policy has different provisions for providing notice when you "have work" and when you "begin work."
47. Part I, Section C, of the policy states "we have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance."
48. Defendant AIG (now Commerce and Industry) denied plaintiff's claim, arguing defendant-employer's workers' compensation policy afforded no coverage for accidents taking place in North Carolina. *Page 13 
49. Because on July 30, 2007, Mr. Suggs went to ABT to inquire about adding other states to defendant-employer's policy and to inform ABT that the accident had taken place, the Full Commission finds that on the date of this accident, defendant-employer carried workers' compensation insurance in the State of North Carolina as provided by the AIG policy.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On July 17, 2007, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has been disabled from any employment as a result of the injuries sustained in the compensable injury from July 17, 2007 through the date of this Opinion and Award, and is entitled to compensation for his temporary total disability at the rate of $333.34 per week until he returns to work or until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff rebutted the presumption of impairment and therefore plaintiff's claim is not barred by N.C. Gen. Stat. § 97-12.
4. Pursuant to N.C. Gen. Stat. § 97-91, the Industrial Commission is given the authority to determine all questions arising under the Article, if not settled by agreement of the parties. The Industrial Commission has the right and duty to hear and determine questions of fact and law regarding the existence of insurance coverage and the liability of the insurance carrier. Green v. Spivey, 236 N.C. 435,73 S.E.2d 48 (1952). *Page 14 
5. Defendant AIG provided workers' compensation insurance coverage for defendant-employer in North Carolina on July 16, 2007 pursuant to Item 3C, entitled "Other States Insurance," further outlined in Part III of the insurance policy. Harrison v. Tobacco Transport, 139 N.C. App. 561,533 S.E.2d 871 (2000). To the extent there is an ambiguity with respect to Paragraph 4 of Part III of the policy as to the specific definition of "have work," "any ambiguity in the policy language must be resolved against the insurance company and in favor of the insured." Woods v.Insurance Co., 295 N.C. 500, 506, 246 S.E.2d 773 (1978); Harrison v.Tobacco Transport, supra, at 568-569, 533 S.E.2d at 875 (2000) (interpreting the phrase "have work" as physically working in the State of North Carolina).
6. Defendant-employer provided proper notice to AIG, through Appalachian Underwriters, of work beginning in North Carolina. Defendant-employer also complied with the notice requirement outlined in Section B of Part III of the policy which states, "Tell us at once if you begin work in any state listed in Item 3C of the Information Page." The phrase "at once" is not defined in the policy, is ambiguous and, therefore, must be construed against the drafter. Woods v. Insurance Co.,supra.
7. Defendant-employer properly maintained insurance coverage in North Carolina for all relevant periods of time and, as such, no penalty should be assessed.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD *Page 15 
1. Defendant Commerce and Industry Insurance Company (formerly AIG) owes coverage to its insured, defendant-employer KVS Construction, Inc. for plaintiff's injuries sustained on July 16, 2007 in North Carolina.
2. Subject to the attorney's fee approved below and a credit for amounts previously paid to plaintiff by defendant-employer, defendant Commerce and Industry Insurance Company (formerly AIG) shall pay compensation to plaintiff in the weekly amount of $333.34 from July 17, 2007, until he returns to work or until further Order of the Industrial Commission. The amount that has accrued shall be paid in a lump sum.
3. Defendant Commerce and Industry Insurance Company (formerly AIG) shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
4. Defendant Commerce and Industry Insurance Company (formerly AIG) shall pay a reasonable attorney's fee in the amount of 25% of the compensation benefits awarded in paragraph 2 of this Award. Of the accrued amount, 25% shall be paid directly to plaintiff's counsel. Thereafter, defendants shall pay every fourth compensation check to plaintiff's counsel.
5. On the date of this injury by accident, defendant-employer carried workers' compensation insurance in the State of North Carolina. Therefore, I.C. No. PH-2040 against James Fleming and Keith Suggs is DISMISSED.
6. Defendant Commerce and Industry Insurance Company (formerly AIG) shall pay the costs due the Commission.
This 6th day of July, 2009.
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 16 
CONCURRING:
S/___________________ STACI T. MEYER COMMISSIONER
S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1